## August H. Wobbe, Defendant in Error, v. Johanna Schaub, Impleaded, Plaintiff in Error.

1. HUSBAND AND WIFE—*when former competent as witness for latter.* If the subject-matter of the litigation concerns the separate property of the wife, the husband is competent either for or against her as to his or her acts or concerning any fact or circumstance pertaining to the case. He is not, however, competent as to admissions or conversations "made by him to her or by her to him or by either to third persons except in suits or causes between such husband or wife."

2. TRUST—*when fund may be traced and return awarded from specific property.* If one knowingly permits the employment of trust funds in the purchase and improvement of property, the same, even though commingled with other money belonging to such person, may be traced and the return awarded out of the property purchased in part and improved in part by such trust fund.

3. INTEREST—*when awarded upon trust funds.* A *cestui que trust* may recover interest upon trust funds employed by a trustee in his own affairs or employed by him in connection with the affairs of another with the knowledge of such other that the funds being so employed were trust funds.

Bill in chancery. Error to the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1908. Affirmed. Opinion filed September 12, 1908.

A. H. BAER, for plaintiff in error.

WISE & McNULTY and E. W. EGGMANN, for defendant in error.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

August H. Wobbe, defendant in error, filed his bill in the Circuit Court of St. Clair county charging that on the 29th day of December, A. D. 1891, his mother, Laura Wobbe, died leaving him and her husband, Henry Wobbe, beneficiaries under a certain certificate of insurance held by her in the American Legion of Honor, for the sum of $2,000 payable in the following proportions, to wit: To said Henry Wobbe, her husband, one-fourth, or the sum of $500, and to Henry Schaub, trustee for said August H. Wobbe, three-fourths or the sum of $1,500; that some two months later the amount called for by the certificate was paid by said association and the said Henry Schaub received $1,500 as trustee for defendant in error; that on August 29, 1896, said Henry Schaub purchased some ten acres of land of the Common Fields of Cahokia in St. Clair county, Illinois, stating at the time to the father of said August that he had paid $1,500 for the same and had invested part of the funds of August in the purchase thereof; that he used the balance of said trust fund for making improvements and betterments on said premises; that Johanna Schaub, his wife, had notice and knew that August's money was being used in the purchase of said lands and in building houses

thereon; that said August received assurances from his grandfather, the said Henry Schaub, that his money was invested in the purchase of said lands and the improvements made thereon and believed the title to the same was in his name or in the name of Henry Schaub as trustee for him, but since investigating the matter for himself had ascertained the title to said land was taken in the name of Johanna Schaub, the wife of said Henry; that the placing of said title in the name of Johanna was done through the fraud and connivance of said Henry and Johanna Schaub at the time of said purchase; that said Johanna has encumbered the premises by two mortgages held by Prosper J. Soucy; that said August arrived at the age of twenty-one years on September 4, 1906, and immediately demanded a settlement of the trust fund claimed to be due him as aforesaid, which was refused.

The bill made Johanna Schaub, Henry Schaub and Prosper J. Soucy defendants and asked that said August H. Wobbe be decreed to have a lien on said premises and improvements thereof, for the amount invested therein by said Henry J. Schaub as trustee for him; that said Johanna and Henry Schaub be ordered and decreed to pay the said sum together with interest thereon from August 29, 1896, within a time to be fixed by the decree and in case of failure so to do, the master in chancery of said court be required to sell the premises to satisfy said lien.

Johanna Schaub answered denying the allegations of the bill and stating the premises in question were purchased by her, belonged to her in her own proper person and that the deed to the same was rightfully made to her. The defendant Soucy answered denying certain of the allegations of the bill and setting up two mortgages held by him upon said premises, amounting to the sum of $335. The bill was taken as confessed against the defendant Henry Schaub, who filed no answer. After the hearing leave was given the complainant below to amend his bill by averring directly

that said Henry Schaub invested all or a portion of said trust fund in the purchase of said land and making said improvements and that said Johanna Schaub had notice of and knew that complainant's money was being used for such purposes and also by asserting with more particularity the claim of complainant of a lien upon said premises for the amount of his money invested therein and the right to have said premises sold to pay the same.

The court below found that the averments contained in the bill were true and the complainant was entitled to a lien on said premises for the sum of $1,500 with interest thereon, at the rate of five per cent per annum for eight years, making a total lien against said premises of $2,100. It also found the claim of said Soucy, which with interest aggregated the sum of $351.80, was a first and prior lien against said premises and that the lien of complainant was subject thereto. It ordered and decreed that Johanna and Henry Schaub or one of them, pay the complainant the amount found due him within sixty days and in default thereof said premises be sold by the master in chancery, with directions after paying all costs and expenses of the suit, to pay said Soucy the amount due him, then to pay the amount due complainant and to bring the remainder of the funds into court.

After the decree was rendered, but at the same term of court, plaintiff in error made a motion to set aside all orders entered in the cause and for a rehearing and supported the same by affidavit of herself and others tending to show that since the hearing new evidence bearing upon the case had been discovered.

The new evidence referred to tended to show that Henry Schaub had made statements out of court different in some respects from those made by him on the trial, but they were not of sufficient importance or of such character as to warrant a new trial and the court did not abuse its discretion in denying the motion.

It plainly appeared from the proofs that Henry Schaub received the $1,500 in question in 1891 from the benefit certificate issued by the American Legion of Honor to his daughter, Laura Wobbe, as trustee for his grandson, August Wobbe; that said trustee at first turned this money over or loaned it to a sister, Mrs. Richman, living in St. Louis, Missouri, and that subsequently Mrs. Richman paid all the money back to the trustee. It also appeared that in 1896 the mother of Johanna Schaub, who had been living with Johanna and her husband, Henry Schaub, died leaving a life insurance policy on her life of $1,000, payable in equal parts to Johanna and Henry Schaub; that this money was collected and subsequently on August 29, 1896, was used in the purchase of the premises in question here; that the total amount given for said premises was the sum of $1,500, $1,000 being paid in cash and a mortgage being given for $500; that for some reason which does not clearly appear from the proofs, the title to the premises was taken in the name of Johanna Schaub alone. Henry Schaub, who was a witness in behalf of defendant in error, swore that the note for $500 secured by mortgage on the premises was paid by him with a portion of the trust fund, which was paid back to him by his sister; that he got the remaining $1,000 of the trust fund from his sister and used it in building a house on the premises in question; that the $1,000 so used by him was not sufficient to entirely pay for the house, its total cost being some $1,300, and the excess was paid by money made off the farm. Schaub also testified that his wife had no other property than the $500 that came to her from the life insurance on her mother's life and that when he paid off the $500 mortgage he used the money belonging to defendant in error for that purpose. Defendant in error swore that he used to go over to Schaub's quite frequently and that plaintiff in error told him half a dozen times, "Well, Gus, you have got some money when you come of age and you can afford to be inde-

·pendent'' and that she said his grandfather had the money. For some two years prior to the trial of this case, Henry Schaub and his wife Johanna had not been living together.

Johanna Schaub denied that any of the trust fund in question belonging to August H. Wobbe was used in paying off the mortgage on the premises in question, or building the house thereon, claiming that all the money used for such purposes, except that obtained from the insurance on her mother's life and represented by the defendant Soucy, was made out of the products of the place and other land rented and cultivated by her and their children. A son, George Schaub, testified to working on the place with his mother and also that he and a brother at times worked in a rolling mill and brought their money to their mother to pay off ''that mortgage with.'' He says however that he went to work in the rolling mill in August or September, 1897, when he was fifteen years old, while the testimony is that the mortgage of $500 upon the land was paid off in July, 1897, so he could not have intended to refer to the mortgage of $500 claimed to have been paid with money belonging to the trust fund.

On the trial of the cause plaintiff in error objected to the competency of Henry Schaub as a witness because he was the husband of his co-defendant, Johanna Schaub, but he was permitted to testify by the court.

The statute which provides that a husband or wife shall be incompetent to testify for or against each other, excepts the husband ''in cases where the litigation shall be concerning the separate property of the wife.''

In this case the deed of the property was taken in the name of the wife and became her separate property; consequently the husband was a competent witness either for or against her as to his or her acts or concerning any fact or circumstances pertinent to the case. Rev. Stat. (Hurd 1905), chapter 51 sec. 5.

The statute however further provides ''that nothing

in this section contained shall be construed to authorize or permit any such husband or wife to testify to any admissions or conversations of the other, whether made by him to her or by her to him or by either to third persons, except in suits or causes between such husband and wife."

During the course of his examination Henry Schaub testified that at the time he paid the $500 mortgage, he had a conversation about it with his wife and was then immediately asked by counsel for plaintiff in error, "At the time you paid this $500 mortgage, did you tell your wife that you used August H. Wobbe's money for that purpose?" And subject to the objection of plaintiff in error he answered "Yes, sir, I did." The question and answer evidently referred to a portion of the conversation between the husband and the wife and was therefore incompetent under the statute. There is however sufficient competent evidence upon this subject in the record to sustain the finding of the court below that plaintiff in error knew the trust fund belonging to defendant in error was being used in payment of the mortgage and the erection of the house.

Where a trustee invests the money of his *cestui que trust* in the purchase of land, taking the title to himself, a trust arises by implication in favor of the *cestui que trust* who may follow the money into the land and hold the land as trust estate. First National Bank v. Leech, 207 Ill. 215; Rice v. Rice, 108 Ill. 199.

It is a further rule of law that a purchaser with notice of a trust either express or implied, becomes himself a trustee for the beneficiary with respect to the property and his bond, in the same manner as the original trustee, from whom he purchased, and this even though he was a purchaser for a valuable consideration. First National Bank v. Leech, *supra;* I. I. I. R. R. Co. v. Swannell, 157 Ill. 616.

This doctrine which can be enforced even against a purchaser for a valuable consideration, must apply with even greater force in a case like this where the

trust fund was invested in the premises and improvements thereon claimed by plaintiff in error, with her knowledge and without any consideration whatever moving from her therefor.

Plaintiff in error claims in order to establish the above rule, there are two essential elements necessary, both of which are lacking here. One of these elements is that the person in whose hands the trust fund has found its way, must have known at the time he acquired it of the character of such fund. From what we have above said it will appear that in our opinion the proofs in the case were sufficient to charge plaintiff in error with knowledge of the character of the fund in question here at the time she acquired it and therefore this question need not be further considered. The other element claimed by plaintiff in error to be essential is, that in order to pursue the trust fund into other hands, the fund must be susceptible of identification as distinct from other funds and not so mixed up with them that it can no longer be separated.

The theory of plaintiff in error is that there is no way of identifying that portion of the house which represents the $1,000 of the trust fund, claimed to have been used in its construction, nor that portion of the farm which enjoys the exclusive benefit of the release of the $500 mortgage.

Nearly all of the cases cited by plaintiff in error in support of her position were cases where it was sought to have money deposited in banks and mixed with the general funds, declared to be trust funds. In those cases the courts held that no trust existed but that the relation between the parties was simply that of debtor and creditor. In other cases like that of Lang v. Metzger, 101 Ill. App. 380, and Union National Bank v. Goetz, 138 Ill. 127, it was held, either that the parties sought to be charged had no notice of the character of the fund or that there was a failure to trace the trust fund into the property against which the lien was sought to be established. In this case there was no

trouble whatever in identifying the property in which the fund in question was placed and it is immaterial, so far as plaintiff in error is concerned, that other money in addition to the trust fund was used in constructing the house and in paying for the premises.

It clearly appeared that the trust fund belonging to defendant in error was used in paying off the mortgage and erecting a house upon the premises owned by plaintiff in error, and there is sufficient evidence to sustain the finding of the court below that this was done with her knowledge and consent. She is the sole owner of the premises in question and apart from the claim of plaintiff in error and said mortgagee, Soucy, no one else appears to have any interest in or claim to them.

This is a suit in equity and it would be manifestly inequitable to permit her knowingly to have the use of the trust fund of defendant in error in paying off the mortgage and erecting the house upon her premises, and escape all liability therefor to the *cestui que trust,* for the reason that she had also used some of her own and her husband's money in purchasing and improving the premises. The amount of the trust fund is accurately fixed, the premises and improvements thereon in which it was invested are definitely determined, and no equitable or legal reason appears why defendant in error should not be permitted to establish his claim against the premises and improvements thereon, for the amount due him.

Complaint is made by plaintiff in error that the court allowed interest upon the trust fund at the rate of five per cent per annum for eight years which would be from July 12, 1899, to the date of the decree. "It is universally held that a trustee employing the trust funds in his own business or for his own benefit is liable for interest thereon, upon the principle that he shall derive no gain, benefit or advantage from the trust fund, and whatever profit may be made therewith properly belongs to the trust estate." 28 Am. & Eng. Enc. of Law (2nd Ed.) 1081, and cases cited.

When plaintiff in error knowingly permitted the trust fund belonging to defendant in error to be used for her own benefit, she in effect became a trustee *de son tort* and as such should be held to the same rule regarding the payment of interest, to which the trustee himself would have been held had he used the money for his own benefit, and the court did not err in requiring her to pay interest upon the fund at the rate named.

The decree of the court below will be affirmed.

*Affirmed.*